IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| EUGENIA ROSE LAWSON,  )<br>   ) <br>   Plaintiff,   )<br>   )<br>vs.   )<br>   )<br>KILOLO KIJAKAZI,[1]   )<br>Acting Commissioner of Social Security,   )<br>   )<br>   Defendant.   ) | Case No. 20-CV-05051-SW-WBG |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Eugenia Lawson's appeal of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff was born in 1967 and has a limited education.[2] R. at 22, 37-38, 74, 152, 154, 192. She previously worked as a supervisor in a sheltered workshop, a warehouse worker, a sandwich maker, a machine tender for plastics, and a hand packager. R. at 21, 68-69, 85-86. In September 2017, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of December 9, 2015. R. at 10, 12, 152-58. In January 2018, her applications were denied. R. at 10, 108-12. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. at 10, 115-16.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] Plaintiff completed the 10th grade but subsequently left school. R. at 38.

On April 4, 2019, ALJ Perry L. Franklin held a hearing during which Plaintiff and a vocational expert testified. R. at 30-73. Thereafter, on July 15, 2019, the ALJ issued a decision finding Plaintiff is not disabled. R. at 10-24. He determined Plaintiff's severe impairments included "degenerative disc disease and degenerative joint disease of the lumbar spine, status post decompression, laminectomy, and fusion; degenerative disc disease of the cervical spine; and cervicalgia." R. at 13. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations:

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. She can perform no repetitive pushing/pulling with the bilateral lower extremities and no climbing of ladders, ropes, or scaffolding. She can perform occasional climbing of ramps and stairs; occasional balancing and stooping; but no kneeling, crouching, or crawling. She must avoid concentrated exposure to vibrations and to hazards, such as unprotected heights and dangerous moving machinery.

R. at 16.

Based on his review of the record, his RFC determination, and the testimony at the hearing, the ALJ concluded Plaintiff is capable of performing her past relevant work as a sheltered workshop supervisor. R. at 21-22. Alternatively, the ALJ determined Plaintiff could work as a retail marker or garment sorter. R. at 21-23. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-6, 149-51. She now appeals to this Court. Doc. 3.

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary

sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted).

In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

### III.   DISCUSSION

Plaintiff's sole argument is the ALJ's RFC is "not supported by substantial evidence." Doc. 14 at 1, 6-16. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*. Further, it is well-settled that an ALJ may properly consider the opinion of an independent or non-examining physician in
3

determining the RFC. *See, e.g., Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citations omitted).

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ (A) dismissed the examining doctor's opinions, and (B) improperly evaluated her testimony and subjective complaints when formulating the RFC.[3] Doc. 14 at 1. According to Plaintiff, this matter should be reversed and remanded. *Id*. at 5-16.

**A. Medical Opinions**

**(1) Standard**

Under the applicable regulations, no single medical opinion or medical source is given any specific evidentiary weight, including controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[4] The ALJ is now required to evaluate the persuasiveness of medical opinions and prior administrative findings with consideration of five factors: supportability,[5] consistency,[6] relationship with the claimant (including length of treatment relationship, frequency of examination, purpose of treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion…." *Id.* §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). When an ALJ evaluates the persuasiveness of medical opinions, supportability and consistency are the "most important factors." *Id*. §§ 404.1520c(a), 416.920c(a).

---

[3] Plaintiff's appeal does not raise any issue regarding the mental limitations in the ALJ's RFC. *See* Doc. 14.

[4] Plaintiff filed her applications after March 27, 2017. R. at 10, 35, 152-58. Accordingly, 20 C.F.R. §§ 404.1520c and 416.920c apply.

[5] Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[6] Consistency is defined as "[t]he more relevant a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In his decision, the ALJ must "articulate…how persuasive [he] find[s] all of the medical opinions…." *Id*. §§ 404.1520c(b), 416.920c(b). Three "articulation requirements" must be met. *Id*. §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s)…[the ALJ] will articulate how [he] considered the medical opinions…from that medical source together in a single analysis using the factors" identified above. *Id*. §§ 404.1520c(b)(1), 416.920c(b)(1). Second, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). Third, when the ALJ finds "two or more medical opinions… about the same issue are both equally well supported…and consistent with the record…but are not exactly the same, [the ALJ] will articulate how [he] considered the other most persuasive factors" set forth above. *Id*. §§ 404.1520c(b)(3), 416.920c(b)(3).

**(2)  Medical Opinions Considered by the ALJ**

**(a)  Justin Wilberding, D.O.**

Dr. Justin Wilberding, a consultative examiner, provided two separate evaluations regarding Plaintiff's claim for disability. R. at 347-51, 486-90. In December 2017, Dr. Wilberding reviewed Plaintiff's medical records, thoroughly examined her, and concluded she suffered from cervicalgia, left hip pain, and arthritis of multiple joints. R. at 347-51. His physical examination revealed normal gait and normal muscle strength of the bilateral upper and lower extremities. R. at 348. He observed that she was able to get on and off the exam table without any assistance and did not require any assistive devices for ambulation. *Id.* His examination revealed "normal range of motion of the bilateral upper and lower extremities," normal grip strength bilaterally with normal finger opposition and normal fine finger movement, no muscle atrophy or spasm, and a negative bilateral straight leg test. *Id*.

Dr. Wilberding noted an exception to the normal range of motion findings with respect to her left hip in which Plaintiff indicated "significant left hip pain." *Id*. He also observed Plaintiff was unable to ambulate on her heels or toes and that she was able to squat and rise with mild difficulty. *Id.* Regarding physical limitations, Dr. Wilberding opined Plaintiff would be able to "sit for 3 hours, stand for a total of 3 hours, walk for a total of 1.5 hours and stand and walk for a combined total to not exceed 3 hours with option to change posture as needed to minimize discomfort" in a normal eight-hour workday. R. at 348-49.

Dr. Wilberding prepared a range of motion chart after his December 2017 evaluation which indicated normal ranges of motion for the shoulder, elbow, wrist, and grip strength. R. at 350. He found normal overall upper extremity strength. *Id.* He observed normal ranges of motion for the knee, ankle, cervical spine, and lumbar spine. R. at 350-51. Although he noted some limitations with the left hip, he found overall lower extremity muscle strength was within normal limits. *Id*.

After the April administrative hearing, the ALJ sent Plaintiff to Dr. Wilberding for a second examination in May 2019. R. at 486-90. At that time, Dr. Wilberding opined Plaintiff suffered from lumbago, cervicalgia, and radiculopathy. R. at 487. Again, Dr. Wilberding noted Plaintiff had a normal gait and normal muscle strength of the bilateral upper and lower extremities. *Id*. He found normal grip strength bilaterally with normal fine finger movements and normal finger opposition. *Id.* He observed that Plaintiff did not have muscle atrophy or spasm, did not require any assistive devices for ambulation, was able to ambulate on her heels and toes and heel-to-toe with good balance, and had a negative bilateral straight leg test. *Id.* She was able to squat and rise with only minor difficulty. *Id.* His examination revealed a "normal range of motion of the bilateral upper and lower extremities with some restricted ROM of the spine." *Id*. He opined Plaintiff was able to lift and carry up to twenty pounds occasionally; sit for three hours during a workday; stand and walk for two hours during a workday; frequently reach (including overhead); and occasionally

handle, finger, and push/pull. R. at 491-93. Additionally, Dr. Wilberding found Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. R. at 494.

Dr. Wilberding also prepared a range of motion chart in 2019 which indicated normal ranges of motion in the shoulder, elbow, and wrist. R. at 489. He found normal grip strength and normal strength in the upper extremities. *Id.* He observed normal ranges of motion in the knee, hips and ankle areas. R. at 489-90. He found some limitations in the cervical and lumbar spine. R. at 490. However, despite the noted limitations, Plaintiff's overall lower extremity muscle strength was observed within a normal range. *Id.*

### (b) Daniel Gwartney, M.D., and S. Gupta M.D.

In January 2018 and January 2019, respectively, Drs. Gwartney and Gupta, both state agency consultants, reviewed Plaintiff's medical records, including the examination reports from Dr. Wilberding, and both found Plaintiff could perform light work with some postural limitations. R. at 20, 74-86, 354-63.

Dr. Gwartney opined that Dr. Wilberding overestimated the severity of Plaintiff's restrictions and that his opinion "contrasts with the other evidence in the record" which renders it less persuasive. R. at 85. Based on his review of the medical records, Dr. Gwartney determined Plaintiff could stand and/or walk for a total of 6 hours in an 8-hour workday, could sit for about 6 hours in an 8-hour workday, could occasionally lift 20 pounds and and could frequently lift 10 pounds. R. at 81-82. He found Plaintiff could frequently climb ramps and stairs, frequently climb ladders, ropes and scaffolds, and frequently balance, stoop, kneel, crouch and crawl. R. at 82. Dr. Gwartney also opined Plaintiff would need to avoid concentrated exposure to vibration. R. at 83.

Dr. Gupta assessed Plaintiff's physical residual functional capacity on January 3, 2019. R. at 354-361. He found Plaintiff could occasionally lift 20 pounds, could frequently lift 10 pounds, could stand or walk for about 6 hours in an 8-hour workday, and could sit about 6 hours in an 8-

hour workday and was unlimited in push and pull. R. at 355. Dr. Gupta determined that Plaintiff could frequently climb ramps and stairs and could frequently balance. R. at 356. He also found Plaintiff could occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch and crawl. R. at 356. Unlike Dr. Gwartney, Dr. Gupta found no environmental limitations. R. at 358.

Dr. Gupta also considered the December 2017 medical source statement from Dr. Wilberding and found that his conclusions, including the alleged severity of Plaintiff's functional limitations, were not supported by the available medical records. R at 360. In particular, he cited medical evidence that her gait was normal, her "neuro" was intact, and she had normal range of motion in the spine. R. at 360.

### (3) The ALJ's Consideration of the Medical Opinions

"It is not the role of [a reviewing] court to reweigh the evidence presented to the ALJ or to try the . . . case de novo." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (citation omitted). When reviewing the record for substantial evidence, a court may not substitute its own judgment for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). With regard to expert medical opinions, it is the function of the ALJ to resolve conflicts among the opinions of physicians. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). As noted above, the applicable regulations no longer require the ALJ to defer or give any specific weight, including controlling weight, to a particular medical opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

With respect to Dr. Wilberding, the ALJ's opinion fully considered and addressed both the December 2017 and May 2019 examinations. R. at 20. Although the opinions of Dr. Wilberding "strongly informed" the formulation of the RFC, the ALJ found portions of his opinions, including his assignment of physical limitations, to be "not persuasive" as they were "difficult to reconcile with his mostly normal observations." R. at 20. Regarding the December 2017 examination, the ALJ noted Plaintiff's limitations as assessed by Dr. Wilberding appeared to be based "off [her]

8

self-reports" as "they are inconsistent with [Dr. Wilberding's] observations." *Id*. The ALJ also found that despite observing "significant left hip pain with range of motion" and "significant tenderness to palpation of the bilateral paraspinal muscles," Dr. Wilberding also found minimal gait difficulties, normal strength, a negative bilateral straight leg raise test, no muscle atrophy or spasm, and a full range of motion of the cervical, thoracic, and lumbar spine. R. at 20; *see also* R. at 348.

Similarly, the ALJ found Dr. Wilberding's examination from May 2019 to be inconsistent when he opined that Plaintiff could only sit for three hours, stand for two hours, and walk for two hours, and never handle, finger, or feel with either upper extremity; however, during the same visit, he observed Plaintiff had a normal gait, had no muscle atrophy or spasms, and had normal strength with normal sensation. R. at 20; *see also* R. at 492-93. According to the ALJ, the "reduced range of motion in [Plaintiff's] cervical and lumbar spines does not sufficiently explain the drastic limitations put forth by Dr. Wilberding." R. at 21. Because of his largely normal physical exam findings and observations, the ALJ wrote "[i]t is very difficult to understand what led to [Dr. Wilberding's] extreme manipulative restrictions . . . ." R. at 20-21.

Plaintiff argues this matter must be remanded because the ALJ failed to "address the factor of consistency when addressing" Dr. Wilberding's opinions. Doc. 14 at 11. Despite Plaintiff's claims to the contrary, the ALJ specifically addressed the consistency (or inconsistency) of Dr. Wilberding's opinions when he compared the largely normal physical examination findings with his opinion assessing significant physical limitations. The ALJ did not err by finding Dr. Wilberding's opinions were "not persuasive." R. at 20-21. An ALJ may properly reject the opinion of any medical expert if it is inconsistent with the medical record as a whole, or where a physician renders inconsistent opinions that undermine the credibility of such opinions. *Goff v.*

*Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Pearsall*, 274 F.3d at 1218-19. Substantial evidence in the record supports the ALJ's decision to find Dr. Wilberding's opinion "not persuasive."

The ALJ also found the prior administrative findings of Dr. Gwartney and Dr. Gupta were persuasive. R. at 20. Both consultants found postural limitations less restrictive than those found by Dr. Wilberding and those assigned by the ALJ in the RFC. R. at 20, 82, 95, 356. The ALJ considered their findings and accounted for Plaintiff's alleged difficulties with more stringent limitations. R. at 20. The ALJ found the "overall idea put forward by both consultants that [Plaintiff] has physical limitations, but that she could nevertheless perform a reduced range of light work" to be persuasive as it was "consistent with substantial evidence." *Id.*

Plaintiff contends the RFC was not supported by substantial evidence in the record. To the contrary, the ALJ also specifically considered the prior findings of Dr. Gwartney and Dr. Gupta in formulating the RFC in this case, as well as the physical examination findings and observations from Dr. Wilberding. Moreover, the ALJ's determination of the RFC contained more stringent limitations in favor of the Plaintiff in an attempt to account for her alleged difficulties. *See id.* Although Plaintiff did not challenge the weight afforded to the findings of Drs. Gwartney and Gupta, because the ALJ considered the same when determining his RFC, substantial evidence supports the ALJ's decision to find these opinions persuasive and supports the determination of the RFC.

**B.  Subjective Complaints**

  **(1)  Standard**

When evaluating a Social Security claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication;

and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each of these factors. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

A reviewing court does not reweigh the evidence before the ALJ. *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" the credibility of testimony, including a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). This is because determinations about credibility "are in the province of the ALJ," and therefore, this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

### (2) The ALJ's Consideration of Plaintiff's Subjective Complaints

Plaintiff argues the ALJ did not include "a logical explanation of the effects of the symptoms, including pain" on her ability to work pursuant to SSR 96-8p.[7] Doc. 14 at 7. Specifically, Plaintiff contends remand is required because the ALJ's assessment "relied on mischaracterization[s] of the evidence and perceived inconsistencies that did not exist in the record." *Id*. at 8. However, as discussed *supra*, the ALJ properly discussed the objective medical evidence and inconsistencies in the record supporting his RFC determination.

---

[7] SSR 96-8p requires an ALJ to include in their decision "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL374184, at *7.

In determining Plaintiff's RFC to perform light work, the ALJ considered, *inter alia*, the credibility of Plaintiff's subjective complaints. R. at 10-24. The ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." R. at 17. In support of this finding, the ALJ acknowledged the record suggested Plaintiff would have limitations associated with her lumbar and cervical spine impairments. R. at 17-19. But the ALJ also noted Plaintiff's treatment providers, as well as consultative examiners, offered varying diagnoses related to her spine. R. at 18.

The ALJ also considered the June 2015 imaging of Plaintiff's spine, which showed "[m]ild spondylitic changes . . . on several levels" and the June 2018 MRI of her spine, which indicated "chronic appearing grade 1 L4 on L5 anterolisthesis" and spondylosis – with the greatest at L4-L5 and L5-S1 vertebral levels. R. at 18, 291, 397. Because of the abnormal MRI, Plaintiff underwent spinal surgery in July 2018. R. at 18, 371-72. And, as the ALJ noted, the surgery was a success. R. at 18. Before being discharged from the hospital, Plaintiff informed the physician that her pain was "a lot better" and "improved." *Id*; *see also* R. at 373. There were also treatment notes that Plaintiff was "walking okay." R. at 18.

After surgery, the ALJ noted Plaintiff sought little, if any, treatment, outside of an appointment with her primary care provider in August 2018. R. at 19. At that appointment, Plaintiff reported her back was better, but not great. *Id*.; *see also* R. at 472. Later that same year, Plaintiff failed to show up to a scheduled appointment. R. at 19, 480. Plaintiff testified at the hearing that her insurance "ran out," and her "charity insurance expired in December." R. at 19, 50. The ALJ found it "reasonable" that her lack of insurance and financial concerns may have kept her from seeking consistent treatment, but further noted "the general lack of visits to the

12

emergency room or to free or reduced-cost clinics during much of the relevant period is not consistent with the debilitating symptoms" she described. R. at 19.

Plaintiff further contends the ALJ erred by failing to "support his conclusion that [Plaintiff] had not tried to access low-cost or free clinics." *Id*. at 9. However, the ALJ's consideration of Plaintiff's treatment, or lack thereof, was done properly. There is no evidence Plaintiff was ever denied medical treatment due to financial reasons. *See Goff*, 421 F.3d at 793 (holding the ALJ properly considered the claimant's failure to take prescription medication because, contrary to the claimant's argument, there was no evidence that he was denied medical treatment due to financial reasons). Thus, the ALJ properly considered Plaintiff's treatment record, including failing to appear for an appointment, and general lack of visits to the emergency room or to free or reduced-cost clinics during much of the relevant period. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("The ALJ properly considered [the claimant]'s lack of medical care, including his failure to seek care from 'charity' providers, as relevant, considering [the claimant]'s allegations of 'unbearable back pain for the last two years.'").

In addition, the ALJ further acknowledged that when Plaintiff sought treatment, the symptoms she alleged were not the same as the symptoms she reported at the hearing. R. at 19. For example, at the hearing, Plaintiff testified that she claimed to suffer from "weekly headaches," but she never reported headaches during her few visits with her primary care provider in 2018. R. at 58-59, 431, 459, 473.

Plaintiff also argues the ALJ erred by finding Plaintiff's daily activities were inconsistent with her subjective reports of disabling pain. Doc. 14 at 13. Based on Plaintiff's testimony, the ALJ found Plaintiff remains capable of preparing simple meals, watering her plants using a garden hose, taking out trash from her bathroom, and shopping in stores for groceries. R. at 19. While her ability to perform these daily activities does not disprove disability, "[i]nconsistencies between

subjective complaints of pain and daily living patterns may…diminish credibility." *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (quoting *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)).

On review, this Court cannot reweigh the evidence and must defer to the credibility assessments made by the ALJ. Here, the credibility assessment is supported by good reasons and substantial evidence. Based on the foregoing, the Court will not disturb the ALJ's decision to discredit, in part, Plaintiff's subjective complaints.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: December 28, 2021  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE